**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**MELISSA R. HALE,**
       **Plaintiff,**

v.                                                          Case No: 3:08cv151/MCR/MD

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**
       **Defendant.**

_____

**REPORT AND RECOMMENDATION**

This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Rules 72.1(A), 72.2(D) and 72.3 of the local rules of this court relating to review of administrative determinations under the Social Security Act and related statutes.  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying claimant Hale's application for disability insurance benefits and Supplemental Security Income (SSI) benefits under Titles II and XVI of the Act.

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

## PROCEDURAL HISTORY

Plaintiff, Melissa Hale, filed applications for benefits claiming an onset of disability as of June 3, 2003. The applications were denied initially and on reconsideration, and Ms. Hale requested a hearing before an administrative law judge (ALJ). A hearing was held on July 31, 2007 at which Ms. Hale was represented by counsel and testified. A vocational expert also testified. The ALJ entered an unfavorable decision (tr. 14-25) and Ms. Hale requested review by the Appeals Council without submitting additional evidence. The Appeals Council declined review (tr. 6-8). The Commissioner has therefore made a final decision, and the matter is subject to review in this court. *Ingram v. Comm'r of Soc. Sec. Admin*, 496 F.3d 1253, 1262 (11th Cir. 2007); *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998). This timely appeal followed.

## FINDINGS OF THE ALJ

Relative to the issues raised in this appeal, the ALJ found that Ms. Hale had severe impairments of (1) a disc herniation at C4-5, (2) neural foraminal narrowing at C3-4, (3) degenerative changes at C5-6 and C6-7, (4) trochanteric bursitis, (5) L5-S1 facet joint sclerosis, and (6) a history of cervical strain, but that she did not have an impairment or combination of impairments that met or equaled one of the impairments listed in 20 C. F. R. Part 404, Subpart P; that she had the residual functional capacity to lift or carry up to fifty pounds and stand or walk at least two hours in an eight hour day with a sit/stand option and with some limitations on use of her legs; that she had no past relevant work; that she was a younger individual with a high school education; that there were a significant number of jobs in the national economy that she could perform; and that she was not under a disability as defined in the Act.

## STANDARD OF REVIEW

In Social Security appeals, this court must review de novo the legal principles upon which the Commissioner's decision is based. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)). There is no presumption that the Commissioner followed the appropriate legal standards in deciding a claim for benefits, or that the legal conclusions reached were valid. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996); *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002). Failure to either apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

The court must also determine whether the ALJ's decision is supported by substantial evidence. *Moore*, 405 F.3d at 1211 (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)). Even if the proof preponderates against the Commissioner's decision, if supported by substantial evidence, it must be affirmed. *Ingram*, 496 F.3d at 1260; *Miles*, 84 F.3d at 1400. Substantial evidence is more than a scintilla but less than a preponderance, and encompasses such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Moore*, 405 F.3d at 1211 (citation omitted). In determining whether substantial evidence exists, the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Secretary's decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence. *Moore*, 405 F.3d at 1211 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). Findings of fact of the Commissioner that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); *Ingram*, 496 F.3d at 1260.

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The social security regulations establish a five-step evaluation process to analyze claims for both SSI and disability insurance benefits. *See Moore,* 405 F.3d at 1211; 20 C.F.R. § 416.912 (2005) (five-step determination for SSI); 20 C.F.R. § 404.1520 (2005) (five-step determination for DIB). A finding of disability or no disability at any step renders further evaluation unnecessary. The steps are:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairment?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent any other work?

These regulations place a very heavy burden on the claimant to demonstrate both a qualifying impairment or disability and an inability to perform past relevant work. *Moore,* 405 F.3d at 1211 (citing *Spencer v. Heckler,* 765 F.2d 1090, 1093 (11th Cir.1985)). If the claimant establishes such an impairment, the burden shifts to the Commissioner at step 5 to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *Allen v. Bowen,* 816 F.2d 600, 601 (11th Cir. 1987). If the Commissioner carries this burden, claimant must prove that she cannot

perform the work suggested by the Commissioner.  *Doughty,* 245 F.3d at 1278 n.2; *Hale v. Bowen,* 831 F.2d 1007, 1011 (11th Cir. 1987).

## PLAINTIFF'S MEDICAL HISTORY

Ms. Hale was involved in a motor vehicle accident on June 4, 2003.  She was taken to the emergency room complaining of pain "all over," particularly on her left side.  Neck and shoulder x-rays were unremarkable.  She was diagnosed with cervical and left-shoulder strain, and discharged in stable condition (tr. 125-31).  She returned three days later complaining of right-hip pain.  An x-ray of her hip was read as normal (tr. 132-141).

Ms. Hale was treated by Dr. Stephne West, a chiropractor, from June 2003 through February, 2005 (tr. 166-197).  Dr. West referred Ms. Hale for an MRI on August 25, 2003 which disclosed right paracentral and right neuroforaminal disc herniation at C4-5 (tr. 142).

Ms. Hale was seen at the clinic of P. K. Garg M. D. and Anju Garg, M.D. on September 5, 2003, where a physician's assistant diagnosed lower back pain and wrote a note restricting her to light duty (tr. 155, 156).  She returned on December 29, 2003 complaining of tenderness in her spine and shoulder.  She remained restricted to light duty (tr. 154).  On December 29, 2003, and on January 12 and 16, 2004 there was reduced range of motion in the spine (tr. 151-53).  She returned on January 30, 2004 still complaining of neck pain (tr. 150).

Seven months after her motor vehicle accident, on January 28, 2004, Ms. Hale saw Robert Sackheim, M.D., a pain management specialist, complaining of pain in her back and legs.  She told Dr. Sackheim that she had smoked a "reefer" that day and admitted to using marijuana daily to control her headaches (tr. 144–149).  She returned on February 4, 2004 complaining of pain in her neck and lower back, and describing it as a six on a scale of one to ten.  She declined injection therapy, and Dr. Sackheim referred her for a massage (tr. 143).

**Eight months later, on November 16, 2004 Ms. Hale went to James Smith, D.O., a family practitioner, complaining of headaches. Dr. Smith noted complaints of joint pain, stiffness and myalgia, but found no muscle atrophy or weakness. Ms. Hale was alert and oriented, with a normal gait and normal mental function, and with full range of motion in her extremities but reduced range of motion in her spine. Dr. Smith prescribed Flexeril and Lortab (tr. 266-68). Ms. Hale returned on December 27, 2004, and x-rays revealed "minimal" facet joint sclerosis in the lumbar spine. The cervical spine was unremarkable. The diagnosis was neck and lower back pain (tr. 263–265). On January 26, 2004 Ms. Hale reported moderate relief from her medications (tr. 262).**

**On March 3, 2005 Ms. Hale told Dr. Smith's office that she had lost her prescriptions, but was told they could not be replaced (tr. 261). An MRI taken the next day showed straightening of the cervical spine with spondylosis at multiple levels, and possible neural foramen compromise primarily at C4-5 and C6-7 (tr. 272, 273). Two days after she told Dr. Smith's office that she had lost her prescriptions she went to the emergency room complaining of neck, side, and hip pain. She reported that her medication had been stolen. She was given prescriptions for a muscle relaxer and Lortab (tr. 198–202).**

**Ms. Hale returned to Dr. Smith on April 8, 2005 complaining of continued cervical and lumbar pain which she described as "severe" and reported that her left leg "went out" two weeks earlier. Dr. Smith found full range of motion except in the spine but no muscle atrophy or weakness (tr. 256–258). On April 14, 2005, Dr. Smith completed an application for a handicapped parking permit in which he checked a box indicating that Ms. Hale had a severe limitation in her ability to walk (tr. 203). An MRI of Ms. Hale's lumbar spine taken that same day was read as unremarkable (tr. 271). Ms. Hale continued to see Dr. Smith regularly through February 2006 for primary care. There was no significant change in her complaints (tr. 314-24).**

Dr. Smith completed a medical verification form for Ms. Hale on June 17, 2005. He opined that she should not lift more than five pounds, or reach, stoop, pull, push, squat, climb, or crawl. He also indicated that she needed to change position every hour, and that her medication caused drowsiness (tr. 228). On July 13, 2005, Dr. Smith completed a questionnaire for a state welfare agency. He indicated that Ms. Hale could not work due to cervical radiculopathy, and that she was waiting for an evaluation by a neurosurgeon (tr. 229). On February 7, 2006 Dr. Smith completed another assessment form. He opined that Ms. Hale could walk or stand for less than one hour in an eight-hour workday, could sit for one to two hours in that time, and could lift less than five pounds. She was restricted at climbing, bending, kneeling, squatting, and crawling, and would require fifteen minute rest periods every two hours (tr. 291–92).

Sean Fitzgerald, M.D., a board certified neurologist, examined Ms. Hale on May 4, 2005. On physical examination he found that her right upper extremities were normal, though she had some tenderness in her right shoulder and hip. He noted that MRIs of her lumbar spine were "completely normal," though she had foraminal encroachment in her cervical spine. Dr. Fitzgerald wrote a letter To Whom It May Concern, noting that a recent MRI of her hip and electrical tests of her cervical region were normal. He felt that epidural injections were an appropriate treatment (tr. 224–227).

Ms. Hale was examined by Jean Diabezies, Jr., M.D., on November 16, 2005. She complained of neck, back, and right hip pain. Dr. Diabezies noted that she had "mild" facet joint sclerosis, some disc herniation, and bursitis, that her hip and pelvis were normal, and that she walked with an antalgic gait favoring her right. Ms. Hale refused a cortisone shot. Dr. Diabezies recommended Ibuprofen and advised Dr. Smith to discontinue current medication (tr. 276–282).

On August 2, 2006, Ms. Hale saw Shane VerVoort, M.D., a pain management specialist. She stated that she felt lower back pain about every other day, and that

the pain was eased by medication, a massage by her husband, or by elevating her legs. She had hip pain but no arm or hand symptoms. Dr. VerVoort observed that she moved around the room without difficulty. He found full strength and intact extremity sensation and reflexes. She had a normal gait and could stand on either leg. X-rays had shown some facet-joint sclerosis. Dr. VerVoort opined that Ms. Hale sustained a 3% permanent impairment from her June 2003 car accident (tr. 325–334).

On March 28, 2007, Ms. Hale was examined by Leo Chen, M.D., an orthopedic surgeon. Dr. Chen noted that Ms. Hale had no significant degenerative changes in her right hip, "minimal" degenerative changes in her lumbar spine, and "minimal" disc changes. There was decreased range of motion in the neck and back, but range of motion was otherwise full. She had a normal gait, could toe and tandem walk, and sensation was intact. She reported subjective pain and numbness in her forearms, but had full grip strength. Dr. Chen concluded that Ms. Hale could lift and carry fifty pounds occasionally and twenty-five pounds frequently, and could stand or walk for at least two hours in an eight-hour workday. He found that she would need to alternate sitting and standing periodically, would have reduced ability to push and pull, would be able to climb, kneel, or crawl only occasionally, but had no manipulative limitations (tr. 299–308).

Ms. Hale returned to the emergency room on June 14, 2007. She complained of "multiple vague complaints of neck pain" that had started suddenly, four days before. It was noted that she had no documented medications and that her symptoms were mild. X-rays showed "minor" spurs in her cervical spine. She was given Lortab and discharged (tr. 335–342).

## HEARING TESTIMONY

At the July 31, 2007 hearing, Ms. Hale testified that she last worked in June 2003. She last saw Dr. Smith in September 2006, and had begun seeing a Dr.

Burnett[1] for treatment. She was taking a muscle relaxant and a pain medication. Dr. Burnett would not give her more Lortab, and she still had two of the ten tablets she received during her last emergency room visit. She was in pain and felt tingling and numbness in her right arm and side. She had problems sitting, walking, and standing due to her right hip and her pain was eight on a scale of one to ten every morning. She also stated that she treated the pain with medication (which caused dizziness and drowsiness) and hot showers, Icy Hot, and ice packs. She lay down three or four times a day for "at least a couple of hours," and could not perform household chores. She could still drive and take care of her personal needs. She watched television for six to eight hours each day, and could prepare some meals with a crock pot. Before the motor vehicle accident she had worked at a pizza restaurant part-time and had worked as an "elderly sitter" and cleaned single-family homes. She said she received a settlement payment from her accident in December 2006 (tr. 367-79).

The vocational expert testified that a hypothetical claimant with the limitations described in Dr. Chen's assessment could engage in a wide range of medium, light, and sedentary work. He agreed that a claimant with the limitations described in Dr. Smith's February 2006 assessment could perform no work (tr. 381–386).

## DISCUSSION

Ms. Hale argues that the ALJ erred in improperly rejecting the opinions of her treating physicians and substituting his own opinion therefore, and in improperly rejecting her subjective complaints of pain, and that she was disabled from her onset date as a matter of law. The Commissioner argues that the ALJ's findings were supported by substantial evidence and must, therefore, be sustained. The issue thus presented is whether the ALJ's decision that the plaintiff was not

---

[1] Possibly Barrett; his records are not in the file.

disabled, in light of her physical condition, age, education, work experience, and residual functional capacity, is supported by substantial evidence in the record.

Ms. Hale contends that the ALJ improperly rejected the opinion of Dr. Smith and substituted his own opinion in its place, and further that the ALJ improperly discounted her subjective complaints of pain. Because there is much overlap in these issues, they are combined here for clarity.

## APPLICABLE LEGAL STANDARDS

**Physician's opinion**

Absent good cause, the opinion of a claimant's treating physician must be accorded considerable or substantial weight by the Commissioner. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-1241 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Broughton v. Heckler*, 776 F.2d 960, 960-961 (11th Cir. 1985); *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986). "Good cause" exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Phillips,* 357 F.3d at 1241; see also *Lewis*, 125 F.3d at 1440 (citing cases).

If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnor v. Bowen,* 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on (1) the length of the

treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical impairments at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R. 404.1527(d).

The opinion of a non-examining physician is entitled to little weight, and, if contrary to the opinion of a treating physician, is not good cause for disregarding the opinion of the treating physician, whose opinion generally carries greater weight. *See* 20 CFR § 404.1527(d)(1); *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985); *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *Hurley v. Barnhart*, 385 F.Supp.2d 1245, 1255 (M.D.Fla. 2005). However, a brief and conclusory statement that is not supported by medical findings, even if made by a treating physician, is not persuasive evidence of disability. *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987); *Warncke v. Harris*, 619 F.2d 412, 417 (5th Cir. 1980).

"When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Phillips*, 352 F.3d at 1241. Failure to do so is reversible error. *Lewis*, 125 F.3d at 1440 (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986));[2] *see also Nyberg v. Commissioner of Social Security*, 179 Fed.Appx. 589, 591 (11th Cir. 2006) (Table, text in WESTLAW)(also citing *MacGregor*).

Finally, the ALJ cannot substitute his own judgment for that of medical experts, *Freemen v. Schweiker*, 681 22d 727 (11th Cir. 1982), or "arbitrarily substitute his own hunch or intuition for the diagnoses of a medical professional." *Marbury v. Sullivan*, 957 F.2d 837, 840-41 (11th Cir. 1992) (concurring opinion).

## Pain and credibility

As to Ms. Hale's subjective complaints, pain is treated by the Regulations as a symptom of disability. Title 20 C.F.R. § 404.1529 provides in part that the

---

[2]*MacGregor* further held that "Where the [Commissioner] has ignored or failed properly to refute a treating physician's testimony, we hold as a matter of law that he has accepted it as true." 786 F.2d at 1053.

Commissioner will not find disability based on symptoms, including pain alone, ". . . unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms." *Accord* 20 C.F.R. § 416.929. The Eleventh Circuit has articulated the three-part pain standard, sometimes referred to as the *Hand*[3] test, as follows:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Ogranaja v. Commissioner of Social Security*, 186 Fed.Appx. 848, 2006 WL 1526062, *3+ (11th Cir. 2006) (quoting *Wilson*) (Table, text in WESTLAW); *Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1216 (11th Cir. 1991).

The Eleventh Circuit has also approved an ALJ's reference to and application of the standard set out in 20 C.F.R. § 404.1529, because that regulation "contains the same language regarding the subjective pain testimony that this court interpreted when initially establishing its three-part standard." *Wilson, supra*, 284 F.3d at 1226. Thus, failure to cite to an Eleventh Circuit standard is not reversible error so long as the ALJ applies the appropriate regulation.

But "[w]hile both the Regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." *Elam*, 921 F.2d at 1215. The Eleventh Circuit has held that "pain alone can be disabling, even when its existence is unsupported by objective evidence." *Foote v. Chater*, 67 F.3d 1553,

---

[3]*Hand v. Bowen*, 793 F.2d 275, 276 (11th Cir.1986) (the case originally adopting the three-part pain standard).

1561 (11th Cir. 1995)(citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)); *Walker v. Bowen*, 826 F.2d 996, 1003 (11th Cir. 1987); *Hurley v. Barnhart*, 385 F.Supp.2d 1245, 1259 (M.D.Fla. 2005). However, the presence or absence of evidence to support symptoms of the severity claimed is a factor that can be considered. *Marbury*, 957 at 839-840; *Tieniber v. Heckler,* 720 F.2d 1251, 1253 (11th Cir. 1983).

Finally, if the Commissioner refuses to credit subjective testimony of the plaintiff concerning pain he must do so explicitly and give reasons for that decision. *MacGregor v. Bowen,* 786 F.2d at 1054. Where he fails to do so, the Eleventh Circuit has stated that it would hold as a matter of law that the testimony is accepted as true. *Holt v. Sullivan,* 921 F.2d at 1223; *MacGregor v. Bowen,* 786 F.2d at 1054. Although the Eleventh Circuit does not require an explicit finding as to a claimant's credibility, the implication must be obvious to the reviewing court. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable the reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole. *Dyer*, 395 F.3d at 1210 (11th Cir. 2005) (internal quotations and citations omitted). And of course, the reasons articulated for disregarding the plaintiff's subjective pain testimony must be based upon substantial evidence. *Wilson*, 284 F.3d at 1225-1226; *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991); *Hurley*, 385 F.Supp.2d at 1259.

Underlying the *Hand* standard is the need for a credibility determination concerning a plaintiff's complaints of pain. Those complaints are, after all, subjective. "[T]he ascertainment of the existence of an actual disability depend[s] on determining the truth and reliability of [a claimant's] complaints of subjective pain." *Scharlow v. Schweiker*, 655 F.2d 645, 649 (5th Cir. 1981) (holding that the ALJ must resolve "the crucial subsidiary fact of the truthfulness of subjective symptoms

and complaints").[4]  People with objectively identical conditions can experience significantly different levels of pain, and pain is more readily treated in some than in others.  "Reasonable minds may differ as to whether objective medical impairments could reasonably be expected to produce [the claimed] pain.  This determination is a question of fact which, like all factual findings by the [Commissioner], is subject only to limited review in the courts . . . ."  *Hand, supra,* at 1548-49.  It is within the ALJ's "realm of judging" to determine whether "the quantum of pain [a claimant] allege[s] [is] credible when considered in the light of other evidence."  *Arnold v. Heckler*, 732 F.2d 881, 884  (11th Cir. 1984).   Thus, a physician may be told by a patient that he or she is in pain, and the physician may believe it, but the ALJ is not bound by that.  The evidence as a whole, including the existence of corroborating objective proof or the lack thereof, and not just a physician's belief or the plaintiff's claims, is the basis for the ALJ's credibility determination.

Ms. Hale contends that the ALJ erroneously rejected the opinion of Dr. Smith. She argues that the ALJ's stated reasons for doing so were inadequate.  In discussing Dr. Smith's assessments, the ALJ found:

> [T]hese opinions are inconsistent with treatment notes and not supported by the record as a whole.  On April 4, 2005 Dr. Smith completed an application for disabled parking permit, which opined that the claimant had a severe limitation in her ability to walk due to an arthritic, neurological or orthopedic condition.  His treatment records dated December 27, 2004 through April 8, 2005, however, do not support this assessment.  Treatment notes consistently indicated that the claimant had a normal gait, normal bilateral pulses in her lower extremities bilaterally (sic) with no edema, no radiation of pain to her lower extremities, as well as normal motor and sensory functions (Exhibit 16F).

---

[4]  Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit.  *Bonner v. Pritchard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

*Case No: 3:08cv151/MCR/MD*

(Tr. 22-23). The ALJ went on to point out that Dr. Smith indicated that medication made Ms. Hale drowsy, but there was no mention of medication side effects in his records; that he indicated that Ms. Hale could not work due to cervical neuropathy and he was awaiting an opinion from a specialist, but the specialist, Dr. Fitzgerald reported an essentially normal physical examination and felt that only epidural injections were indicated; and that Dr. Smith's opinions were not supported by his own medical records, or by the record as a whole. Specifically, the other examining and treating physicians found foraminal narrowing at C3-4, a bulge at C4-5, but found no evidence of cervical radiculopathy, and recommended over-the-counter NSAID drugs for symptom control. Moreover, none of the other physicians indicated that Ms. Hale's symptoms were disabling or prevented her from engaging in work activity (tr. 23).

Ms. Hale argues that the ALJ did not state his reasons for rejecting Dr. Smith's opinions with particularity, and quotes a part of the ALJ's decision (doc. 12, p. 5). However, the quoted language is only a small part of the ALJ's analysis. Indeed, the ALJ's reasoning and explanation for rejecting Dr. Smith's opinions, summarized above, took up an entire page of his decision.

Ms. Hale further argues that "a disc herniation would obviously cause the claimant severe and chronic pain." (Doc, 12, p. 6). No doubt a disc herniation can cause severe and chronic pain, but it does not have to. What is "obvious" is that Ms. Hale, through counsel, is giving the court her own opinion on the medical effects of her condition. Neither the ALJ nor the court will rely on such speculation.

The ALJ did not base his decision on a hunch or on his own medical opinion. He based it on the reports of many physicians who examined and treated Ms. Hale and recorded complaints but no real physical findings other than what appeared on imaging tests. And, the ALJ clearly applied the *Hale* standard in reaching his conclusion. There is no doubt that there were imaging findings of cervical problems, but the ALJ pointed to other objective findings that belied the seriousness

of plaintiff's subjective complaints of pain.  Specifically, he noted that tests had shown no neurological deficits or lower extremity abnormalities, that motor, sensory and reflexes were consistently normal, that electrical tests in the cervical region were normal, that MRI's of the low back and hip were normal, that straight leg raising was negative, that there was full strength in the arms and legs, that no physician found radiating pain in the arms or legs, and, importantly, that Ms. Hale went for over a year and a half taking only over-the-counter medications.  Moreover, the ALJ noted that Ms. Hale settled the lawsuit arising from her motor vehicle accident in December 2006, and  sought no further treatment until June 2007, just a month before the hearing in this case.

It was clearly within the ALJ's "realm of judging" to make a credibility determination from these facts, and he did so, finding that Ms. Hale was "less than credible as to her allegations as to disabling symptoms attendant with her impairments." (Tr. 22).  The ALJ's findings overall were supported by substantial record evidence; he did not improperly reject the opinion of Dr. Smith, he did not substitute his own opinion for that of a medical expert, and he did not improperly reject Ms. Hale's subjective complaints of pain.

Accordingly, it is respectfully RECOMMENDED that the Commissioner's decision be AFFIRMED, that judgment be entered in favor of the defendant, and that the clerk be directed to close the file.

At Pensacola, Florida this 12th day of March 2009.

/s/ *Miles Davis*
**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  See 28 U.S.C. § 636;** *United States v. Roberts*, **858 F.2d 698, 701 (11th Cir. 1988).**